REUBEN W. ROPES & others *vs.* GEORGE LANE.

If a bill of sale of barrels of mackerel, describing them as marked No 1, No. 2, and No. 3, respectively, includes all that the vendor has on hand of any particular number, the title thereto will pass to the purchaser, although the same are not separated from other barrels of mackerel. But if the bill of sale does not include all that the vendor has on hand of any particular number, and no separation or special designation is made of those which are intended to be sold, the title will not pass, although the vendor gives to the vendee a storage receipt for them.

If a case is submitted upon the report of an auditor, who states all the facts and his conclusions from those facts, the court will not be bound by his conclusions, although he states them as facts found by him.

An officer who holds as messenger in insolvency goods which are claimed by persons to whom the insolvent debtor has undertaken to sell them, after a demand by those persons for the delivery of the goods, may set up their title in defence to an action of replevin brought against him by other persons to whom the insolvent debtor has also assumed to sell the goods.

If property is sold and a constructive delivery thereof made to a common agent of two purchasers, without any separation of their respective portions, another purchaser of the same property from the original owner cannot avail himself of such want of separation and division of their portions between themselves, to defeat their title.

REPLEVIN of certain barrels and packages of mackerel. The case was referred to an auditor, who made a report, the substance of which is as follows :

The defendant, being a deputy sheriff, on the 3d of February 1863 held the mackerel replevied as messenger in insolvency, in the case of George F. Wonson & Brothers, insolvent debtors and on that day a demand upon him was made by J. Kittredge & Co. for six hundred and fifty barrels, and by Chandler & Trull for eight hundred and twenty-nine and one half barrels, which they respectively claimed as their property, but which the defendant declined to deliver to them. On the next day, all of the mackerel held by the defendant were replevied by this writ.

In September 1862 the plaintiffs made an agreement with Wonson & Brothers to purchase of them all the mackerel which they should pack that year, the price to be made satisfactory, and payments and advances to be made from time to time. From that time until the close of the fishing season, about the 25th of November of that year, one of the plaintiffs, Ripley Ropes, acting under said agreement and for his firm, attended frequently, and a part of the time daily, at the place of business of Wonson & Brothers, in East Gloucester, where their business of receiving and packing mackerel from their vessels as they arrived was done, observing and noting the arrivals of vessels and the fares they brought, and the. packing of the mackerel, to a considerable extent, at times giving directions as to the manner of packing, and taking from Wonson & Brothers, from time to time, as the fares of the different trips were packed, bills of mackerel so brought and packed, each fare by itself, the prices being fixed at the time and with reference to the market price at the time the different fares were packed. No particular count of any fare or the packages billed to the plaintiffs was made, nor any special examination or designation was made in any case to identify the packages enumerated in any bill. And during all the time the plaintiffs, as suited their convenience, took and shipped from the wharf of said Wonson & Brothers such portions of each of the said bills as they chose, taking in the course of the season some portion of the packages enumerated in each of the said bills. And the plaintiffs during the same time paid to Wonson & Brothers in goods and cash the full amount of the bills of mackerel so rendered to them, not with reference or in, corresponding amounts to the amounts of any particular bill or bills rendered or to be rendered, but as the same was called for by Wonson & Brothers. No particular form of delivery of any of the mackerel was had, nor was any possession or ownership exercised by the plaintiffs over the property, except such as may be inferred from the general oversight and watching of the progress of the business, and the taking and shipping of such portions of the property, as is before stated herein.

During the same time or a portion of it, George Garland, as agent for Messrs. J. Kittredge & Co. and Chandler & Trull, bargained from time to time for certain quantities and kinds of mackerel with Wonson & Brothers, and paid for the same and received bills of the same, specifying the number of barrels and the different qualities of mackerel so bargained for, but no delivery of any was made, nor any designation or specification made of what portions of the mackerel so bargained for by him were intended for either of the parties, his principals. Subsequently, after his last purchase, about the 15th of November, and near the end of the season, Garland agreed with Wonson & Brothers that all the mackerel he had bargained for as agent should be stored in the warehouses of Wonson & Brothers, without in any way designating what part or proportion of the same belonged to either, except by asking for a storage receipt to each of his principals for certain specified number of barrels and parts of barrels of the different qualities and kinds bargained for, and at the same time agreed for his principals to pay to Wonson & Brothers twelve and a half cents per barrel for storage. Subsequently, and before receiving the storage receipts he had asked for, he went to the wharf of Wonson & Brothers and saw the workmen rolling barrels of mackerel into some of the warehouses, some of which were of the same kind and qualities as those he had bargained and received bills for. He also examined one warehouse in which mackerel were stored, and which was full, and saw the number of barrels said to be stored there, scored upon the door. This warehouse was called the " old store." He also examined the other warehouses, with reference to their capacity for storage, but made no attempt to count or mark or in any way designate the packages enumerated in his bills, nor to discriminate by any mark or number or other indication the packages belonging to one of his principals from those of the other, or of anybody else. On the 21st of November he received the storage receipts, one of which acknowledged the receipt for storage for Chandler & Trull of four hundred and fifty barrels of No. 1 bay mackerel, one hundred and twelve barrels of No. 2 bay mackerel, eleven barrels

and one half No. 1 extra shore mackerel, sixty-five barrels No. 1 shore mackerel, one hundred and fifty-seven barrels and one half No. 2 shore mackerel, and thirty-three and one half barrels of No. 3 shore mackerel; and the other of which acknowledged the receipt for storage for J. Kittredge & Co. of four hundred and seventy-five barrels of No. 1 bay mackerel, and one hundred and seventy-five barrels No. 2 bay mackerel. These receipts were forwarded by him to his principals; and no other acts or things were done by either party, tending to show a delivery or change of ownership or possession of the mackerel so bargained for by Garland. On the 25th day of November the packing was finished and the warehouses closed, filled with mackerel and other property stored therein, and so remained until the time when the defendant took possession, and until the service of the writ of replevin in this suit.

On the 1st day of December 1862 the plaintiffs received from Wonson & Brothers two bills, which were said by them to contain all the mackerel on their wharf not already billed to the plaintiffs, and which, from an examination of the books of account of the packing, and comparison with the bills already made to the plaintiffs, appeared to contain all mackerel packed by them not already included in their previous bills to the plaintiffs. And these two bills were accepted by the plaintiffs as containing all the mackerel not already billed to them, and afterwards, on the 19th of December, settled for by them and paid, by settlement of their account for advances made to Wonson & Brothers, by which it appeared that Wonson & Brothers had been overpaid for all the mackerel for which they had rendered bills to the plaintiffs. And at this time Ripley Ropes with the said George F. Wonson went upon the wharf, Wonson unlocked the doors of the warehouses, but no entry or count of the contents was made, as they were full, and, having seen the condition of the warehouses and the barrels on the wharf not housed and covered, Ropes agreed with Wonson that the said mackerel should be stored in the warehouses and upon the wharf during the winter, and that the plaintiffs should pay to Wonson & Brothers twelve and a half cents per barrel for storage. Ropes

thereupon directed Wonson as to piling and rolling up the bar-
rels on the wharf, under cover and out of the way of the frost,
so that there might be no hindrance from that source to the ship-
ping of the mackerel in the spring. It appeared, by inspection
of the officer's return upon the writ of replevin in this action,
that at the time of service three hundred and seventy-six barrels
of No. 1 bay mackerel were stored in one of the warehouses,
called the western fish house, that no other mackerel were stored
there, and that another lot of the same kind were stored in
the other warehouses, the whole number so found being less
than the number of barrels of No. 1 bay mackerel specified in
the two storage receipts referred to. The defendant contended
that this fact, taken in connection with the acts and doings of
Mr. Garland in the premises, showed a delivery and identifica-
tion of that particular lot of mackerel, and that such delivery
of a part of the mackerel included in the two storage receipts
was a symbolical delivery of the whole. But the auditor found
that there was no delivery of any of the mackerel specified in
the said storage receipts. The defendant further contended that
the facts showed no delivery of the mackerel to the plaintiffs,
sufficient to give them title and right of possession. It appeared
by a comparison of the return of the officer upon the writ of
replevin in suit with the plaintiffs' bills, after deducting from
them the various shipments they had made during the season,
that a portion of the mackerel replevied is described and ap-
praised as of a different number and quality from any that is
called for by the plaintiffs' bills, and the defendant contended
that the plaintiffs have failed to show title or right of possession
to such packages. And upon this matter the auditor found that
the property replevied in this action is identical with the mackerel
on the wharf and in the storehouses on the 15th day of Decem-
ber, and that the plaintiffs had a sufficient delivery of all the
mackerel then upon the wharf and in the storehouses ; that a
comparison of the descriptions and lots of mackerel called for
by the plaintiffs' bills, with the list of packages returned by the
officer as taken on the writ, shows a large deficiency of some
kinds and a small excess of other kinds, and a large aggregate

deficiency; and that the whole property replevied in this suit is substantially described in the plaintiffs' bills, rendered to them by Wonson & Brothers, and that the plaintiffs have good title and right of possession to so many of the goods mentioned and described in their writ in this action as are described and enumerated in the officer's return upon said writ, and the appraisement thereto annexed. During the hearing before the auditor, the defendant, under objection by the plaintiffs, was allowed to introduce testimony of the demand made by Messrs. Kittredge & Co. and Chandler & Trull upon the defendant, on the 3d day of February.

The auditor also found that from September 1st 1862 to December 1st 1862 Wonson & Brothers sold to other parties than the plaintiffs or Garland large quantities of mackerel, which were delivered from their wharves, in the common course of business, but this was not known to the plaintiffs, who supposed they were buying and receiving all the mackerel, according to their agreement; but Garland knew that Wonson & Brothers were selling to others, though not to what extent; and that a large portion of the small excess of different kinds of mackerel replevied by the plaintiffs was described in the return of the officer as different from those named in the bills of the plaintiffs, (which had not been taken away by them,) in quality, and, as described, were known in the trade as different articles bearing different prices, which fact was taken into consideration by the auditor in coming to the conclusion stated in his report.

His report further stated that all the facts (but not the whole evidence) were reported, upon which he made his findings.

At the trial in the superior court, before *Morton,* J., the plaintiffs read the auditor's report, and offered no other evidence. The defendant thereupon asked the court to instruct the jury as follows:

" 1. As matter of law, the facts found and reported by the auditor, upon which he based his conclusions, are not sufficient to authorize a verdict for the plaintiffs.

" 2. The facts found and reported by the auditor, upon which he based his conclusion that the articles claimed by the plaintiffs

in replevin were delivered to them, are not sufficient, as matter of law, to authorize the jury to find a delivery to the plaintiffs of the articles claimed by them in the writ of replevin as against the defendant, or as against Kittredge & Co. and Chandler & Trull.

"3. The facts found by the auditor and reported, upon which he based his conclusions that the articles sold to Kittredge & Co. and Chandler & Trull, were not delivered, are sufficient in law to require the jury to find that the articles named in the storehouse receipts passed to Chandler & Trull and to Kittredge & Co., as against any claim of the plaintiffs.

"4. As matter of law, upon the facts found by the auditor, the plaintiffs are not entitled to receive the excess of mackerel replevied over and above those described in their bills of sale.

"5. The facts reported by the auditor are sufficient, as matter of law, to require the jury to find a verdict for the defendant, for three hundred and seventy-six barrels of mackerel stored in the western fish house, as against the claim of the plaintiffs."

The judge declined to give these instructions, and instructed the jury that upon the auditor's report they were authorized to find for the plaintiffs for all the property replevied. The defendant thereupon offered no evidence, and did not argue the case to the jury, and a general verdict was returned for the plaintiffs. The defendant alleged exceptions.

*J. G. Abbott & L. Child,* for the defendant, cited *Scudder* v. *Worster,* 11 Cush. 573, and cases cited; *Mason* v. *Thompson,* 18 Pick. 305; *Bennett* v. *Platt,* 9 Pick. 558; *Tuxworth* v. *Moore,* Ib. 347; *Young* v. *Austin,* 6 Pick. 280; *Chapman* v. *Searle,* 3 Pick. 38; *Kimberly* v. *Patchin,* 19 N. Y. 330; *Lansing* v. *Turner,* 2 Johns. 13; *Whitehouse* v. *Frost,* 12 East, 614; *Hurry* v. *Mangles,* 1 Camp. 452; *Jackson* v. *Anderson,* 4 Taunt. 24.

*J. W. Perry & S. B. Ives, Jr.,* for the plaintiffs. 1. The court below simply ruled that the jury were authorized to find a verdict for the plaintiffs. Surely on the facts stated in the auditor's report they were not required, as matter of law, to find for the defendant. The auditor finds as a fact that there was a sale and delivery of all the mackerel to the plaintiffs, and his report was by law *prima facie* evidence of that fact, and, if it was

uncontrolled, the jury were bound to find for the plaintiffs. The case was tried upon the evidence introduced. There was no agreement of facts ; nor were any facts stated for the purpose of submitting them to the revision of the court. The case was before the jury upon the evidence ; and no question of law was referred by the auditor to the court. This court, under such circumstances, will not inquire into the finding of the facts by the auditor or by the jury. *Walker* v. *Penniman,* 8 Gray, 233. *Leathe* v. *Bullard,* Ib. 545. *Commonwealth* v. *Morris,* 1 Cush. 391. *Barnacoat* v. *Six Quarter Casks of Gunpowder,* 1 Met 225. *French* v. *Bancroft,* Ib. 502. 2. But the auditor's report was right. · The plaintiffs exercised such acts of ownership over the mackerel that the title passed to them. *Jewett* v. *Warren,* 12 Mass. 300. *Crofoot* v. *Bennett,* 2 Comst. 258. *Bates* v. *Conkling,* 10 Wend. 389. 2 Kent Com. (6th ed.) 496, and notes. 3. No property passed to Garland's principals. The mackerel bargained for in their behalf were never separated from the rest or identified, and when a demand was made upon the defendant neither party for whom Garland acted could point out any specific barrels, or identify the mackerel claimed under the demand. There was no mode of designating or ascertaining what belonged to either of them. 4. The findings of the jury were in other respects correct.

CHAPMAN, J. The property in controversy originally belonged to Wonson & Brothers. They had several vessels engaged in the mackerel ·fishery, and as these vessels came in with their fares they prepared and assorted the fish, packed them in barrels and half barrels, had them inspected and branded with the inspector's mark, and thus prepared them for sale and delivery.

The first of the negotiations respecting the fish in controversy commenced in September 1862. At that time the plaintiffs agreed with Wonson & Brothers to purchase of them all the mackerel they should pack that year ; the price to be made satisfactory, and payments and advancements to be made from time to time. A contract of this character for the sale of property not yet ready to be delivered is merely executory. If a portion of the property is afterwards prepared and the delivery

completed, the contract thereby becomes executed as to that part, but remains executory as to the residue. *Mason* v. *Thompson*, 18 Pick. 305. There are some other principles in regard to the sale and delivery of property which may properly be stated here, as the decision of this case will depend upon an application of them to the facts stated in the auditor's report, and to some other facts not yet ascertained. These principles are fully discussed in *Scudder* v. *Worster*, 11 Cush. 573. If the owner of a large quantity of merchandise of this character sells a part of it, the property in that part does not pass to the vendee unless the part which is sold is separated from the part unsold. A designation by some visible mark is a sufficient separation. It is not necessary that an artificial mark should be made for this sole purpose. If the barrels have been inspected and marked as of different qualities, *e. g.*, No. 1, No. 2, No. 3, and the whole of that which is marked No. 1 is sold, a bill of sale given and a formal delivery made, the property will pass without any further separation or designation, and the delivery will have been perfected, though the barrels marked No. 1 are left intermingled with the other barrels which have different marks. So if there are one hundred barrels marked No. 1 and the owner makes a contract to sell one hundred and fifty barrels of that mark, and makes his bill of sale and formal delivery affirming that there are that number of barrels in the lot, the property in the one hundred barrels will pass to the vendee. But if there are one hundred and fifty barrels in the lot, which have that mark, and the owner sells but one hundred barrels, it will then be necessary to separate the one hundred barrels from the rest, and, if they are not taken away, to designate them by some mark that shall distinguish them from the fifty unsold barrels. If there is no mark of designation and no actual separation, a storage receipt will not supply the defect, for there will have been no delivery of the specific property sold. The vendee can not identify any one of the barrels as his own, so as to authorize him to take it away or replevy it. The property in all the barrels will still remain in the vendor, notwithstanding his bill of sale and his storage receipt.

These rules will enable us to determine the rights of the parties under the agreement of sale above stated, and the transactions which took place afterwards, it being necessary however to make some further inquiries into those transactions.

From the time of making this contract to the close of the fishing season, which was about the 25th of November, Ripley Ropes, one of the plaintiffs, attended at the place of business of Wonson & Brothers frequently and sometimes daily, watching the business and giving directions in regard to it; but none of these acts was sufficient to complete a sale and delivery of the property. As the different fares were packed, he took bills of sale from time to time. When each several bill was made, the prices of the fish it described were fixed. And during all the time the plaintiffs, as suited their convenience, took and shipped from the wharf such portions of each of said bills as they chose, taking in the course of the season some portion of the packages enumerated in each of said bills. But no particular count of any fare, or the packages billed to the plaintiffs was made, nor was any special examination or designation made in any case, to identify the packages enumerated in any bill. In connection with these facts it appears that on the 1st of December it was found by the parties that there was a quantity of fish not included in any previous bills, and that two new bills were then made for the purpose of including them. On the 19th of December the plaintiffs settled and paid for these mackerel. At the same time another act was done which was intended by the parties to constitute a delivery to the plaintiffs of all the mackerel then in the storehouses and on the wharves. Ripley Ropes went and looked at the mackerel; agreed with Wonson & Brothers that they should store them for the plaintiffs at an agreed price, which was paid; gave them directions how to take care of them, and left them in their possession as bailees of the plaintiffs A delivery of this character, which included the whole of the fish on the premises of every quality, was sufficient to pass the whole. But it must be taken in connection with the bills of sale, which designated what was sold and paid for. If it included any property which was not included in the bills of sale, the sale would

not extend to such property, for though it had been delivered, it had not been sold. The vendors might still claim it, on the ground that the sale of it had not been completed.

As to all that was included in the bills the property passed to the plaintiffs as against Wonson & Brothers and all subsequent purchasers, and also against the assignees in insolvency who were appointed some weeks afterwards. The title of the plaintiffs appears thus far to be perfect.

But in the mean time Wonson & Brothers had been attempting to sell a part of the fish to Garland, who acted as the agent of Kittredge & Co. and of Chandler & Trull. It is necessary to analyze the facts in regard to this transaction.

Garland had from time to time bargained with Wonson & Brothers for certain kinds and quantities of mackerel, had paid for the same and had received bills for it; but no delivery had been made up to the 15th of November. About that time he agreed with them that all the mackerel he had bargained for should be stored in their warehouses. Accordingly he took two storage receipts, one of which specified several kinds and quantities received for storage of Chandler & Trull. Among other kinds it specified four hundred and fifty barrels No. 1 bay mackerel. The other receipt specified several kinds and quantities received for storage of Kittredge & Co. among which were four hundred and seventy-five barrels No. 1 bay mackerel. Before taking these receipts Garland went to the wharf and saw the workmen rolling barrels of mackerel into some of the warehouses. He examined one warehouse in which mackerel were stored, and which was full, and saw the number of barrels said to be stored there scored upon the door. He examined the other warehouses with reference to their capacity for storage On the 21st of November he took the storage receipts which are mentioned above.

If the quantity of No. 1 mackerel which was stored in the warehouses was not greater than that which is stated in these receipts, the delivery of the bills of sale, the acts done by Garland in examining the barrels and the warehouses, the contract for storage, and the taking of the storage receipts were sufficient

to pass the property as between him and Wonson & Brothers. Of course they were sufficient as against all subsequent purchasers and assignees, the price having been paid, and there being no fraud. No question arises in respect to any other kinds than the No. 1, because no other kinds have been found which correspond with the receipts. But if the quantity of No. 1 in the storehouses was greater than that mentioned in the receipts, then there was no sufficient separation of that which was purchased from that which was not, to constitute a delivery ; and so the property did not pass even as against the vendor, but the whole contract remained executory. It becomes important therefore to ascertain what quantity of No. 1 mackerel was on hand in the storehouses on the 21st of November.

The auditor's report does not state the quantity directly, but states facts from which the quantity can be ascertained by inference. On the 4th of the next February, when the writ of replevin was served, the officer found in one of the warehouses three hundred and seventy-six barrels of No. 1 mackerel. He found another lot in the other warehouses, the amount of which is not stated, but it is stated that the whole number was less than that specified in the storage receipts. It also appears that on the 25th of November, four days after the storage receipts were given, the packing was finished, the warehouses were closed, filled with mackerel and other property stored therein, and so remained until the service of the writ. From these facts it is clear that on the 25th of November the quantity in the storehouses was less than the quantity sold to Garland. The only other fact that may be thought material to this point is, that from the 1st of September to the 1st of December Wonson & Brothers sold to other parties than the plaintiffs or Garland, large quantities of mackerel; but as the report states that they were delivered from the wharves, it does not appear that any of the No. 1 mackerel which were stored in the warehouses on the 21st of November was included in these sales and removed from the warehouses. On the contrary, a large quantity of mackerel had remained upon the wharves, from which these sales could be supplied. It must therefore be taken as a fact that when

Garland took his receipts there was in the storehouses a less quan tity of No. 1 mackerel than was sold to him and stored for him by Wonson & Brothers; that it had the inspector's mark, which visibly designated it as No. 1, and that it was thereby so plainly designated and distinguished from the other mackerel in the warehouses that no further separation or marking was necessary to complete the delivery of these specific barrels to Garland; so that as between him and his principals on the one hand, and Wonson & Brothers on the other hand, the sale and delivery were perfected. It was also sufficient as against all the acts of the plaintiffs which took place on the 1st and 19th of December as before mentioned.

In order to determine whether the plaintiffs have any claim to these specific barrels of mackerel, or any of them, it .s necessary to know whether any of them had been included in any sale which had been completed prior to Garland's purchase by a spe-cific delivery or separation of the property in the manner stated above. On this point the report is defective. It does not ap-pear from it whether any sale to the plaintiffs had been perfected by a delivery except as to such barrels as had been actually taken away. As to those not taken, it may be that there was such a separation and designation of a part of them that they would pass though they were left on the premises. The report does not show that it was so, nor does it clearly show the con-trary. The burden is on the plaintiffs to show that there was a delivery of some of these specific barrels, in order to entitle them to hold them.

It is true that the auditor finds that the plaintiffs had a suffi-cient delivery of all the mackerel on the wharf and in the store-houses on the 18th day of December. He may possibly mean November. But this statement is to be regarded as a conclu-sion of law, and if it refers to any time prior to the purchase by Garland, the facts found do not warrant the conclusion. The facts found do not make it apparent that the barrels in question or any of them were specifically referred to in any of the bills of sale which had been previously made, or are so described in those bills that they could then have been separated by means

of the mark of designation. It is not even stated when the brands were put upon any of these barrels, nor whether, if described in any bill of sale to the plaintiffs, they were in such a condition that they would pass. The attention of the auditor does not appear to have been called to this point. If there is evidence by which this can be made more certain, the plaintiffs are entitled to have the report recommitted in order that the facts may be fully reported. If it shall not appear that the plaintiffs were entitled to any of the barrels of No. 1 mackerel which were in the storehouse on the 21st of November, by virtue of a sale and a completed delivery, then this action cannot be maintained as to those barrels.

The evidence of the sale to Garland was properly introduced, and also the evidence that the vendees had made a demand on the defendant for the property before the service of the writ of replevin. This demand made it the duty of the defendant to hold the property for them, if their title to it is established, and enables him to set up their title in defence of this suit.

The plaintiffs object that even if the property was sold and delivered to Garland as their agent, yet there was no separation of any specific part as the property of Kittredge & Co. and of the other part as the property of Chandler & Trull. But this is not an objection that would have been open to Wonson & Brothers. The agent of the vendees would have a right to separate the barrels for each, in proportion to their purchases. But if there would be any technical difficulty in bringing a writ of replevin by either of them, it does not arise in the present case. If their right is established, the plaintiffs had no right to replevy the property in the hands of the officer, and must return it to him. They cannot avail themselves of any technical questions that may arise between the owners as to the distribution of the property between themselves after it is returned.

There is still another fact to be ascertained, and for that reason also the report should be recommitted. It appears that there is a small quantity of property which was not included in any of the bills of sale. It appears that an essential part of the sale consisted in fixing the price of what was sold, and

stating that price in the bill of sale. Until that was done the property remained in the vendors, though the whole might be together when a formal delivery was made. The parties might have dispensed with a bill of sale, and an establishment of the price as to any specific part if they agreed to do so. But no such fact appears. A small quantity was overlooked by both parties. As this remained the property of Wonson & Brothers, it would pass to the assignee, and should be returned to the defendant to be delivered to the assignee after it shall have been found specifically what the property is. The remainder of the property replevied belongs to the plaintiffs.

There is yet another fact which should be stated in the auditor's report, namely, the number of barrels of No. 1 mackerel which were sold to Garland. ·

*Exceptions sustained ; report recommitted.*